**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF KENTUCKY**
**AT LOUISVILLE**

**BARRY WAYNE RAYNER**                                    **PETITIONER**

**v.**                                    **CIVIL ACTION NO. 3:07-CV-P300-S**

**TOM CAMPBELL, DIRECTOR**                                    **RESPONDENT**

**MEMORANDUM OPINION**

Petitioner Barry Wayne Rayner, "on his own and through his mother," Petitioner Pamela

D. Echsner, as next friend, filed a petition for writ of habeas corpus pursuant to 28 U.S.C. § 2241

(DN 1).  A few days later, Petitioners filed an amended petition, which they state is intended to

supercede the original petition.  They have also filed an emergency motion concerning incidents

occurring since the filing of the petitions.  For the reasons that follow, the Court will deny the

habeas action, dismiss the action without prejudice, deny a certificate of appealability, and deny

the motion for emergency relief as moot.

**I.  STATEMENT OF FACTS**

The amended petition alleges that Rayner has been held at Louisville Metropolitan

Department of Corrections (Louisville Metro) since October 2006; that Echsner is Rayner's

mother and his "attorney in fact"; and that he is acting as his own counsel in state court.

Petitioners allege that Louisville Metro has denied Rayner access to courts by refusing to

provide him with access to the prison law library to obtain legal research to conduct his defense.

The amended petition further alleges that Rayner has been diagnosed as bipolar, but that

Louisville Metro has not given him appropriate medication, and that Rayner also is suffering

from kidney stones, for which Louisville Metro has given only minimal medical attention.  The

amended petition also alleges that the state court has ignored Rayner's pleas regarding his

inability to access legal research materials at Louisville Metro.  The amended petition further alleges that Louisville Metro is severely overcrowded; that the state courts have subjected Rayner to excessive bail; and that a conspiracy exists between the Jefferson County courts and the prosecutor's office to deny Rayner access to the courts, the right to petition for an appeal bond, and the right to a speedy trial.  The amended petition alleges that Kentucky state court Judge Willett ordered Rayner committed to a mental hospital in retaliation for filing a motion to recuse, and that Judge Willett had an *ex parte* communication with the state prosecutor in violation of state law.

Most recently, Petitioners have filed a motion for emergency relief, alleging that Rayner is in danger of serious and immediate injury to life and limb from Louisville Metro Director Tom Campbell and the staff at Louisville Metro.  Specifically, the motion alleges that, on June 12, 2007, Rayner was transferred from Louisville Metro to Kentucky Correctional Psychiatric Center (KCPC), where he was sent because Director Campbell conspired with Judge Willett and the Jefferson County Prosecutor's Office to confiscate Rayner's legal papers and notes and frustrate Rayner's right to habeas corpus relief and to conduct his own defense.  The motion alleges that during their evaluation, KCPC staff confirmed that Rayner was not insane; that he was capable of conducting his own defense; and that he had a highly elevated liver enzyme count and was suffering from a bladder/kidney infection that was ignored by Louisville Metro medical staff.  KCPC staff additionally prescribed antibiotics and, on Rayner's demand, transferred him back to Louisville Metro.  After his return, Louisville Metro did not reunite Rayner with his legal documents; denied him his antibiotic medication; and placed him in a severely crowded holding tank for eleven hours.  Petitioners allege that when Rayner demanded his medication and

2

to be given his legal papers, he was dragged from the holding tank and beaten by several officers, including Officer T. Dotson.  The motion also alleges that he was given his bed linens while awaiting transfer, but that Officer Dotson grabbed the linens and used them to wipe the dirty, urine-soaked floor before giving them back to Rayner; Officer Dotson then destroyed his legal papers and mail he brought from KCPC and stated, "Who you going to sue now?"

The motion alleges that, after Rayner was moved to "J4," he requested clean linens but was refused.  According to the motion, when Rayner objected to going into a dark area with officers, he was dragged from the entrance of "J4," and an Officer Budley stomped on his head, neck, and kidney area, slammed his head off the walls, and picked him up by the jumpsuit and slammed him into the floor.  When Rayner requested medical attention for his injuries and to be placed in an area with camera surveillance, he was taken to the "mental health walk" where he was deprived of, among other things, linens, blankets, socks, and pillows.  The motion further alleges that Rayner's request for a grievance form was denied because grievance forms are not available on the mental health walk.  A Louisville Metro doctor told him that he had been placed on the mental health walk because he had stated that he wanted to hurt himself.

The motion further alleges that, on June 27, 2007, Rayner was taken to an arraignment, where he was charged with "Escape 2nd" as a pretext for the beating he received, despite the fact that he has been in continuous custody since October 25, 2006.

## II. ANALYSIS

### A. Standing

As a preliminary matter, it is arguable whether Pamela Echsner has standing, as next friend, to file the instant petition on her son's behalf.  The doctrine of "next friend" standing "has

long been an accepted basis for jurisdiction in certain circumstances" and was codified in 1948 at 28 U.S.C. § 2242. *Whitmore v. Arkansas*, 495 U.S. 149, 162-63 (1990). Section 2242 provides, in part, as follows: "Application for a writ of habeas corpus shall be in writing signed and verified by the person for whose relief it is intended *or by someone acting in his behalf*." (emphasis added). "A 'next friend' does not himself become a party to the habeas corpus action in which he participates, but simply pursues the cause on behalf of the detained person, whom remains the real party in interest." *Whitmore*, 495 U.S. at 163. "Next friend" standing is not automatic, and the "burden is on the 'next friend' clearly to establish the propriety of his status and thereby justify the jurisdiction of the court." *Id.* at 163-64.

> Decisions applying the habeas corpus statute have adhered to at least two firmly rooted prerequisites for "next friend" standing. First, a "next friend" must provide an adequate explanation--such as inaccessibility, mental incompetence, or other disability--why the real party in interest cannot appear on his own behalf to prosecute the action. Second, the "next friend" must be truly dedicated to the best interests of the person on whose behalf he seeks to litigate, and it has been further suggested that a "next friend" must have some significant relationship with the real party in interest.

*Id.* at 163-64 (citations omitted).

Ms. Echsner fails to provide adequate explanation why her son cannot appear on his own behalf and prosecute this action. First, she alleges no mental incompetence or other disability preventing his own representation. While she advises that her son has been diagnosed as bipolar, she has not alleged that her son is mentally incompetent. In fact, in her motion for emergency relief, she claims that the KCPC evaluation revealed that her son "was perfectly competent to conduct his own defense personally, and . . . had a extremely high I.Q."

Second, although Ms. Echsner alleges that her son is being denied access to courts, she has not shown that he was denied access to the prosecution of the instant action in this Court at

4

the time of its filing.  Rather, the claims in the amended petition are that Rayner was denied

access to courts by Louisville Metro's refusal to allow him access to the law library for legal

research and due to the overall inadequacy of the law library.  Also in the amended petition, she

broadly claims that her son is being held "incommunicado from the courts," but the meaning of

that statement is wholly unknown.  And she has apparently had some form of contact with him

for him to have communicated the events to her for filing.  While she alleges in the emergency

motion that her son was transferred to KCPC, in part, as a means to suspend the writ of habeas

corpus, he has since been transferred back to Louisville Metro.  And although she alleges that he

has been denied grievance forms and his legal materials, there is no allegation that he has been

denied access to basic writing materials and the mail system or any other allegations of the sort

that would demonstrate an inability to access this Court with respect to this action.[1]  As Ms.

Echsner has failed to adequately explain why her son cannot appear on his own behalf to

prosecute this habeas action, jurisdiction is lacking, and the action will be dismissed, without

prejudice, for this reason.

## B.  Improperiety of petition

Alternatively, even if next friend standing were present, the action would still be

dismissed without prejudice.  First, the claims of overcrowding, denial of medical care,

retaliation, and denial of access to courts are complaints about Rayner's conditions of

---

[1]Ms. Echsner does allege that Officer Dotson took Rayner's "legal papers and mail he brought
from KCPC and destroyed them. . . . then stated 'Who you going to sue now?'"  There is no indication,
however, that those documents, in any way, pertained to the instant action, or that the filing of *any*
document in this action has been prevented.  Moreover, the motion for emergency relief was filed on June
28, 2007, the day after Rayner was taken to state court for arraignment, and there is no indication under
what conditions of confinement he was placed upon his return to Louisville Metro.  Ms. Echsner has thus
failed to show that her son cannot access this Court on his own.

confinement at Louisville Metro.  As such, those claims are not the proper subject of a § 2241

petition.  Rather, they are claims which are more appropriately brought under 42 U.S.C. § 1983.

In fact, Rayner has already filed a § 1983 action on his own behalf, *see* Civil Action No.

3:07CV-P124-S, raising the same conditions-of-confinement claims raised in the amended §

2241 petition.

 Second, the claims related to the legality of his current detention and the pending

criminal trial are premature.  To warrant relief under § 2241, a petitioner is required to exhaust

his state remedies prior to bringing such an action.  *Atkins v. Michigan*, 644 F.2d 543, 546 (6th

Cir. 1981).  "[T]he doctrine of exhaustion of state remedies has developed to protect the state

courts' opportunity to confront initially and resolve constitutional issues arising within their

jurisdictions and to limit federal judicial interference in state adjudicatory processes."  *Id.*; *see

also Rose v. Lundy*, 455 U.S. 509, 518 (1982).  Moreover, "'a federal court should not interfere

with a pending state criminal proceeding except in the rare situation where an injunction is

necessary to prevent great and immediate irreparable injury."  *Fieger v. Thomas*, 74 F.3d 740,

743 (6th Cir. 1996) (citing *Younger v. Harris*, 401 U.S. 37 (1971)).  "*Younger* abstention in civil

cases requires the satisfaction of three elements.  Federal courts should abstain when (1) state

proceedings are pending; (2) the state proceedings involve an important state interest; and (3) the

state proceedings will afford the plaintiff an adequate opportunity to raise his constitutional

claims."  *Hayse v. Wethington*, 110 F.3d 18, 20 (6th Cir. 1997).

 Rayner has a pending criminal case, over which the state has an important interest in

adjudicating.  While he alleges that Jefferson Circuit and District Judges ignore his denial-of-

access-to-courts claim and have conspired with the prosecution to prosecute him, he has not

6

shown that the post-conviction appeals courts would not fully and fairly litigate his constitutional claims, and he has failed to show that a writ of mandamus filed in state court is not an available avenue of immediate relief.  In light of the available avenues through which to raise a constitutional challenge, this Court will not interfere with an on-going Kentucky state court criminal proceeding.  While federal court relief might be a possibility in the future should state court remedies prove unavailable, Rayner has failed to show that the state courts are unable to protect his interests at this time.  Thus, this federal action is presently premature, and the claims for equitable relief will be dismissed for lack of subject matter jurisdiction pursuant to Fed. R. Civ. P. 12(h).

**C.  Motion for emergency relief**

Because the instant habeas action will be dismissed by separate order, the request for emergency relief will be denied as moot.  The Court is, nonetheless, troubled by the allegations made in the motion.  Those allegations, however, really concern conditions of confinement and, as such, they belong in an action under 42 U.S.C. § 1983.  As mentioned above, Rayner has a § 1983 action already pending before this Court raising most of the allegations contained in this § 2241 action.  Rayner may wish to supplement the pending § 1983 action to add the new claims which have occurred since the filing of the complaint in that case and/or file an emergency motion in that case.  To that end, the Clerk is directed to affix the pending § 1983 civil action number on a § 1983 form to be sent to Rayner.  Rayner must file any amendment on the court-approved form.  Alternatively, Rayner may wish to file a new § 1983 complaint.  The Clerk, therefore, also is directed to send a blank § 1983 form to Rayner.

7

### III.  CERTIFICATE OF APPEALABILITY

Before this Court's decision may be appealed, a certificate of appealability must issue.

28 U.S.C. § 2253(c)(1)(a); FED. R. APP. P. 22(b).  A certificate of appealability may issue "only

if the applicant has made a substantial showing of the denial of a constitutional right."

§ 2253(c)(2); *Slack v. McDaniel*, 529 U.S. 473, 483 (2000).  When a district court denies such a

motion on procedural grounds without addressing the merits of the petition, a certificate of

appealability should issue if the petitioner shows "that jurists of reason would find it debatable

whether the petition states a valid claim of the denial of a constitutional right and that jurists of

reason would find it debatable whether the district court was correct in its procedural ruling."

*Slack*, 529 U.S. at 484.

When a plain procedural bar is present and the Court is correct to invoke it to dispose of

the matter, a reasonable jurist could not conclude either that the Court erred in dismissing the

petition or that the petitioner should be allowed to proceed further.  *Slack*, 529 U.S. at 584.  In

such a case, no appeal is warranted.  *Id.*  The Court is satisfied that no jurists of reason could find

its procedural ruling to be debatable.  Thus, no certificate of appealability is warranted in this

case.

The Court will enter an Order consistent with this Memorandum Opinion.

Date:

cc:     Petitioner, Barry Wayne Rayner, *pro se*
        Pamela D. Echsner
        Respondent
        Jefferson County Attorney
4411.009

8